377 So.2d 1368 (1979)
Mrs. Viola VANDERDOES (Deceased)
v.
OCHSNER CLINIC, Paul T. DeCamp, M.D., John Doe, M.D., Jane Doe, M.D., and any Undisclosed Insurance Company.
No. 10455.
Court of Appeal of Louisiana, Fourth Circuit.
December 6, 1979.
Rehearing Denied January 18, 1980.
*1369 Robert S. Vanderdoes, plaintiff-appellant in pro. per.
Adams & Reese, Harold A. Thomas, New Orleans, for defendants-appellees.
Before GULOTTA, BEER and GARRISON, JJ.
GULOTTA, Judge.
Plaintiff, Robert Vanderdoes (substituted in proper person for deceased plaintiff Viola Vanderdoes, his mother), appeals from a summary judgment dismissing his medical malpractice suit directed against the defendant hospital, an examining physician at the hospital, the hospital's medical staff, and the hospital's insurer. Although his contentions are not entirely clear, the gist of plaintiff's argument on appeal is that the trial judge erred in refusing to grant his motions to amend the petition by adding more defendants and stating an additional cause of action. We affirm.
On July 10, 1975 Mrs. Viola D. Vanderdoes filed suit for damages, alleging that because of defendants' negligence she contracted serum hepatitis and/or hepatic disease. She claimed she contracted the disease because defendants failed to employ sterile techniques when blood samples were drawn while she was undergoing medical tests in July 1974. Mrs. Vanderdoes died on October 15, 1975 and her son Robert was substituted as plaintiff.[1] Defendants answered the petition on August 20, 1976.
*1370 I. Denial of Motions to Amend Petition
In October and December 1978, plaintiff filed three separate motions to amend his petition, all of which were denied by the District Court. In the first motion, dated October 3, 1978, plaintiff seeks to add Dr. Meyer Kaplan as a defendant and alleges that Dr. Kaplan's negligence was "responsible for the spreading cancer damages which contributed to her death from stroke and heart disease on October 15, 1978." The second motion, filed on October 20, 1978, sought again to add Dr. Kaplan and also to add Dr. Alton Ochsner as defendants. On December 13, 1978 plaintiff sought again to amend the original petition, making Dr. Ochsner a defendant and alleging that Dr. Ochsner and Ochsner Hospital were negligent in allowing Mrs. Vanderdoes' cancerous condition to spread until it eventually contributed to her death.
We reject plaintiff's argument that the trial judge abused his discretion in denying the motions to amend the original petition. A plaintiff may amend his petition without leave of court at any time before the answer is served. LSA-C.C.P. art. 1151. Defendants' answer was served on plaintiff on August 19, 1976; therefore, plaintiff's attempt to amend in 1978 required permission of the court. The court may permit the filing of a supplemental petition setting forth causes of action which may have become exigible since the date the original petition was filed, provided the supplemental cause of action is "related to or connected with the original petition." LSA-C.C.P. art. 1155; see also, LSA-C.C.P. art. 463, relating to cumulation of actions. Clearly, the amended petitions, alleging a cause of action for wrongful death resulting from negligent treatment of cancer and naming as defendants physicians involved in the new cause of action, were neither related to nor connected with the allegations of the original petition, which seeks damages suffered from contracting serum hepatitis. The trial judge properly denied plaintiff's request to file the amended pleadings.
II. Granting of Motion for Summary Judgment
Defendants moved for summary judgment on October 6, 1977, attaching to their motion affidavits by Drs. George Leonard, Meyer Kaplan, and Paul T. DeCamp.
Dr. Leonard's affidavit avers that he is a pathologist and is "head of the Blood Bank at Ochsner Foundation Hospital"; that he is familiar with the procedure for drawing blood samples at Ochsner Foundation Hospital and that it would be "impossible to contract virile hepatitis by parental means when drawing blood for testing." He states further that even if hepatitis were introduced into the bloodstream, the disease would not manifest itself for a minimum of three weeks.[2] Dr. Leonard states he was of the opinion that the petitioner did not have hepatitis on July 22, 1974.
In Dr. Kaplan's affidavit, he stated that he treated Viola Vanderdoes in 1970; that he was familiar with her medical and physical history during the summer of 1974; that he last examined the petitioner on July 29, 1974 and in his opinion she did not have hepatitis on that date.
Dr. DeCamp's affidavit states that he was a treating physician for Viola Vanderdoes; that he was aware of the procedures of using disposable sterile needles and syringes for the drawing of blood for testing at Ochsner Foundation Hospital; that under prevailing hospital conditions the petitioner "could not get hepatitis from the drawing of blood"; that on July 10 and 12, 1974 he saw Mrs. Vanderdoes and she did *1371 not have hepatitis; that the incubation period for hepatitis is three weeks or longer; and, in his medical opinion, petitioner did not contract hepatitis while a patient at Ochsner Foundation Hospital.
In apparent response to defendants' motion for summary judgment, plaintiff filed his own motion for summary judgment on October 20, 1977. Robert Vanderdoes attached to the motion his own affidavit, in which he states that a statement of material facts, the motion for summary judgment and the memorandum attached in support of that motion, along with the supporting affidavits, are correct to the best of his knowledge. The statement of material facts to which the affidavit refers states that a report by Dr. R. E. Albright concludes that, in Dr. Albright's opinion, enlargement of Viola Vanderdoes' liver suggested "hepatocellular disease" or "hepatitis"; that neither Drs. DeCamp nor Kaplan examined Mrs. Vanderdoes for hepatitis; and that Dr. Kaplan's opinion is "nothing more than a guess."
Plaintiff's "statement of material facts" suggests that during the procedure for drawing blood at the hospital "it could happen" that needles and syringes could become contaminated. Vanderdoes states further that the tests are conducted on a mass production basis in a hurried manner with a limited number of technicians, who because of time limitations do not use adequate sterilization procedures. He suggests, "These are only a few of the many ways one could possibly contact hepatitis at Ochsner Clinic ..." Plaintiff also filed with his motion for summary judgment a copy of a radiology report dated October 1, 1974 regarding a liver scan examination conducted at Mercy Hospital by Dr. R. Albright, in which the doctor states that the findings "would suggest hepatocellular disease." Plaintiff also attached copies of newspaper articles relating to hepatitis and its cure.
We note several crucial differences in comparing the pleadings, the affidavits attached to defendants' motion for summary judgment, and the attachments to plaintiff's motion. First, plaintiff's motion contains no affidavits by medical experts contradicting the statements by the physicians in the affidavits attached to defendants' motion. Second, the statement of Robert Vanderdoes, the substituted plaintiff, is not a statement of fact admissible in evidence, because it is not based on personal knowledge in contradiction of defendants' affidavit; rather, it is more in the nature of argument supportive of his contentions that his mother contracted serum hepatitis at Ochsner Foundation Hospital. The radiology report merely states that on October 1, 1974 Mrs. Vanderdoes showed indications of a hepatocellular disease, but makes no connection between the examinations conducted at Ochsner and the results of the liver scan examination. The documents attached to plaintiff's motion for summary judgment do not meet the requirements of LSA-C. C.P. article 967that is, they do not set forth specific facts showing that there is a genuine issue for trial. The trial judge properly granted the defendants' motion for summary judgment, and he properly denied plaintiff's motion.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The immediate cause of death, according to the death certificate, was cardiac arrest as a consequence of arteriosclerotic heart disease, arteriosclerosis, cerebral arteriosclerosis, and cancer of the left breast.
[2] The petition alleges that on July 10, 15, 19 and 22, 1974, blood was removed from petitioner's arm for the purpose of conducting tests, and that the effects of the disease were manifested on July 22, 1974.